# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| LINDA MAXEY SNIDER, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 7:13-CV-30 |
| CAROLYN W. COLVIN[1], Acting Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) ) |

## REPORT AND RECOMMENDATION

Plaintiff Linda Maxey Snider ("Snider") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that she was not disabled and therefore not eligible for supplemental security income ("SSI"), and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433, 1381–1383f. Specifically, Snider alleges that the ALJ erred in by failing to give the opinions of her treating physicians controlling weight, and improperly discounting her credibility. I conclude that substantial evidence supports the Commissioner's decision on all grounds. Accordingly, I **RECOMMEND DENYING** Snider's Motion for Summary Judgment (Dkt. No. 14), and **GRANTING** the Commissioner's Motion for Summary Judgment. Dkt. No. 21.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Snider failed to demonstrate that she was disabled

---

[1] Carolyn Colvin became the Acting Commissioner of Social Security on February 14, 2013.

1

under the Act.[2] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Snider protectively filed for SSI and DIB on September 26, 2007, claiming that her disability began on April 30, 2007. R. 238, 351–55. The Commissioner denied the application at the initial and reconsideration levels of administrative review. R. 63–68. On June 17, 2009, ALJ Karen B. Peters held a video hearing to consider Snider's disability claim. R. 238–53. Snider was represented by an attorney at the hearing, which included testimony from Snider and vocational expert Donald Anderson. R. 1163–1210.

On September 9, 2009, the ALJ entered her decision analyzing Snider's claim under the familiar five-step process,[3] and denying Snider's claim for disability. R. 238–53. The ALJ found

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

2

that Snider suffered from the severe impairments of: degenerative joint disease of the back, fibromyalgia, diabetes mellitus and neuropathy, hypertension, irritable bowel syndrome, right shoulder problems, psoriasis of the right foot, GERD, left hand carpal tunnel syndrome, and headaches. R. 244. The ALJ further found that Snider retained the RFC to perform a broad range of light work, but she is restricted to occasionally lifting 20 pounds; frequently lifting 10 pounds; should not lift with her right shoulder; should not use her left arm for fine repetitive motions; and should not repetitively use her feet for foot controls. The ALJ further found that Snider can stand, walk, and sit for 6 hours in an 8–hour workday; can occasionally climb ramps and stairs, but not ladders, ropes or scaffolds; can occasionally crouch, crawl, stoop and kneel, but she should not work around heights or machinery hazards. R. 250, 252. The ALJ determined that Snider could not return to her past relevant work as a certified nursing assistant ("CNA"), parts order clerk, assembler, and bagger (R. 250), but that Snider could work at jobs that exist in significant numbers in the national economy, such as cashier, ticket seller, usher, and companion. R. 251. Thus, the ALJ concluded that Snider was not disabled. R. 253.

On September 1, 2010, the Appeals Council remanded the case for a rehearing. R. 255–56. Upon remand, the ALJ was instructed to: (1) create a better audio recording of the hearing; (2) reconcile a discrepancy between the ALJ's conclusion that none of Snider's treating sources felt she could not work and the notation by treating physician Kenneth Walker, M.D. in April 2009 that "[Snider] still has severe pain in low back–can't work;" (3) give further consideration to Snider's maximum RFC with specific reasons as to why it is assigned; (4) elaborate on the opinions of treating and non-treating sources and the weight assigned to them, and further develop the record if necessary; (5) and, if warranted by the expanded record, obtain

3

supplemental evidence from a vocational expert to clarify the assessed limitations with a proper hypothetical. R. 255–56.

Snider filed a second application for disability on August 11, 2010, alleging an onset date of September 11, 2009. R. 104–09, 132. Snider's second claim was elevated to the hearing level, and on February 16, 2011, ALJ Geraldine H. Page held a hearing to consider Snider's new application and the remand order on Snider's prior disability claim.[4] R. 23, 1125–62. Snider was represented by an attorney at the hearing, which included testimony from medical expert Ward Stevens, M.D., and vocational expert John Newman. R. 1125–62.

On March 16, 2011, the ALJ entered her decision denying Snider's claims. R. 22–40. The ALJ found that Snider suffered from the severe impairments of insulin dependent diabetes mellitus with a polyneuropathy and a possible left mild left carpal tunnel syndrome; mild degenerative disc disease and facet arthritis of the lumbar spine; degenerative arthritis/impingement of the right shoulder; degenerative arthritis of the right hip; fibromyalgia; and as of January 25, 2011, depression and anxiety. R. 25. The ALJ found that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 25. The ALJ further found that Snider retained the RFC to perform light work, although she was limited to lifting, carrying, and pulling 10 pounds frequently and 20 pounds occasionally; she could sit, stand, and walk for 6 hours in an 8–hour workday; and she could occasionally balance, stoop, kneel, crouch, and climb ramps and stairs. Snider could not crawl or have a position that required continuous use of the hands, although she could frequently handle, finger and feel. Snider also could not work around hazards, nor could she climb ladders, ropes or scaffolds. Additionally, the ALJ found that as of January 25, 2011, Snider could only have

---

[4] Snider's original application and her second application are now joined and will be considered a consolidated action for purposes of this appeal.

occasional contact with the public and co-workers, and utilize short, simple instructions. R. 35. The ALJ determined that Snider could return to her past relevant work as a product assembler (R. 38), or she could work at jobs that exist in significant numbers in the national economy, such as food prep worker, packer, and inspector/sorter. R. 39. Thus, the ALJ concluded that she was not disabled. R. 40. On November 30, 2012, the Appeals Council denied Snider's request for review (R. 11–13), and this appeal followed. The decision at issue in this appeal is the March 16, 2011 opinion by ALJ Geraldine Page and the Appeals Council denial of Snider's request to review that decision.

## ANALYSIS

Snider argues that the ALJ erred by (1) giving no weight to the opinions of her treating physicians, Kenneth J. Walker, M.D. and Michael A. McMahon, M.D., that she was unable to work; and, (2) finding her subjective pain complaints to be only partially credible. Having reviewed the record as a whole, and for the reasons stated below, I find that the ALJ's decision is supported by substantial evidence and should be affirmed.

Snider was born in December 1964, and suffers from multiple physical and mental impairments, including diabetes with polyneuropathy, degenerative disc disease of the lumbar spine, degenerative arthritis in her right shoulder and right hip, depression and anxiety. R. 1128, 1131–33. Snider most recently worked as a CNA at a nursing home. R. 1129–1130. Snider sustained a workplace injury to her low back on April 30, 2007, and began receiving workers' compensation benefits. R. 1129. Snider has not returned to work since that date.[5] R. 1129.

---

[5] Snider attempted to return to her position at the nursing home briefly in July 2007, but stopped working after a few days due to back pain. R. 569.

5

Snider has been treated by several doctors throughout the relevant period,[6] including treating physicians Drs. Walker and McMahon. R. 533–35, 612–58, 670–86, 784–89, 855–70, 881–82, 921–1031, 1063.  Snider's medical records reflect that she consistently complained of severe pain in her low back with radicular symptoms to the left leg, numbness in her feet, pain in her neck and right shoulder, and headaches.[7]  She was diagnosed with degenerative disc disease, fibromyalgia, uncontrolled type I diabetes, depression and anxiety, among other things. R. 533–35, 612–58, 670–86, 784–89, 855–70, 881–82, 921–1031, 1063.

Despite her complaints of severe pain, Snider's physical exams were generally relatively benign, revealing tenderness and occasionally reduced range of motion in her spine.  Snider repeatedly had negative straight leg raising tests, good range of motion in her hips, normal deep tendon reflexes, and normal muscle strength. R. 187, 191, 195, 198, 614–15, 618–19, 623, 625, 627, 633, 638, 640, 642, 644, 647, 671, 684–86, 785, 789, 793, 855–86, 861, 864, 870, 933, 954, 972.

Snider underwent several diagnostic tests during the relevant period, which revealed mild degeneration in her lumbar spine, with no evidence of fracture or significant degenerative changes. R. 511, 514, 549, 560, 609–10, 667, 966–97.  Additionally, x-rays of Snider's right shoulder in 2009 showed a downward sloping acromion process that could result in impingement syndrome. R. 1064.  X-rays of Snider's right hip in May 2010 showed mild degenerative arthritis. R. 949.

---

[6] This appeal combines two disability claims filed by Snider; thus, the relevant medical records and opinions span from April 30, 2007 through March 16, 2011.

[7] Snider's medical records contain a myriad of other complaints, including pain in her knees, elbows, hands, and feet, swelling in her hands, bursitis in her shoulders, eczema, vertigo, migraines, and blurry vision. R. 916, 925, 972–73.

6

Snider received multiple types of treatment throughout the relevant period, including physical therapy, chiropractic treatment, TENS units, pain medication, and epidural steroid injections, most of which were unsuccessful in alleviating her pain. R. 536–47, 560, 569–607, 809–21, 894–902. Snider's type I diabetes was poorly controlled throughout the relevant period, and neurological testing conducted in June 2009 revealed mild but painful diabetic neuropathy. R. 916–17.

The record contains multiple medical opinions with regard to Snider's functional limitations arising from her medical conditions.[8] On December 20, 2007, state agency physician Richard Surrusco, M.D., reviewed Snider's records and concluded that she was capable of performing light work, with occasional balancing, stooping, kneeling, crouching and crawling, and never climbing ramps, stairs, ladders, ropes or scaffolds. R. 871–77. On April 28, 2008, state agency physician Robert McGuffin, M.D., reviewed Snider's records and agreed that she was capable of performing a range of light exertional work. R. 846–53.

In May 2008, Richard Wilson, M.D., performed an independent medical examination of Snider for purposes of her workers' compensation claim.[9] R. 906. Dr. Wilson diagnosed Snider with lumbar sprain, anxiety and diabetes. He noted that Snider's symptoms were out of proportion to her examination, and felt that she was capable of a gradual return to full activity work. R. 906.

On September 11, 2008, Robert F. Devereaux, M.D. with Giles Family Medicine, completed a form submitted by Snider's counsel and noted that she was totally disabled until January 12, 2009, but that he treated her only one time on June 10, 2008. R. 913. Dr.

---

[8] Several of the opinions relate to Snider's claim for workers' compensation benefits arising out of her April 2007 low back injury.

[9] Dr. Wilson's report is not in the record, but his findings are summarized by James Leipzig, M.D. in his report dated September 15, 2008. R. 906–08.

7

Devereaux's treatment notes from that date state that Snider was functioning at a "very low level," had likely reached maximum medical improvement and "it would appear unlikely that she would be able to return to her previous position." R. 1106–08.

On September 15, 2008, James M. Leipzig, M.D., performed an independent medical examination of Snider for purposes of her workers' compensation claim. R. 906–09. Dr. Leipzig examined Snider and reviewed her medical records. Dr. Leipzig's impression was severe chronic, non-anatomical back pain, severe anxiety disorder with psychiatric overlay, normal neurologic examination, and multiple positive Waddell signs,[10] indicating a nonorganic basis of disease. R. 908. Dr. Leipzig concluded that "from a pure medical basis with regard to her lumbar spine, she is fully capable of full-duty employment without restrictions." R. 908. Dr. Leipzig felt that Snider may have issues with regard to return to full-duty purely from a psychiatric perspective. He found that she was at maximum medical improvement and could easily return to full-duty work at this point, stating, "[t]he only issue which would keep this patient from returning to work would be her obvious desire to not return to work and obvious underlying psychiatric comorbidity." R. 908.

On October 13, 2008, neurologist Timothy L. Hormel, M.D., reviewed Snider's records and provided an opinion as to her functional capacity. R. 910–12. Dr. Hormel summarized Snider's medical problems, stating "a syndrome of diffuse pain including the neck, shoulders, knees and right and low back have been variably described by a number of medical professionals who have attempted to treat Ms. Snider…No structural defect in the nervous system, lumbar spine, or hips has been identified." R. 912 Dr. Hormel also noted that two independent medical examiners have failed to find a specific or identifiable cause of Snider's myriad of complaints

---

[10] The Waddell test is a "clinical test for patients with low back pain that can be used to indicate whether the patient is exaggerating symptoms." Jordan v. Comm'r, 548 F.3d 417, 419–20 (6th Cir. 2008).

identified in the records. R. 912. Dr. Hormel concluded that Snider's chronic low back syndrome could not be attributed to her work injury in April 2007. R. 912.

On January 6, 2009, one of Snider's treating physicians, Dr. McMahon, completed a checkbox form related to Snider's workers' compensation claim, stating that Snider's disability status is causally related to her low back injury of April 30, 2007. R. 914. Dr. McMahon also wrote beside the box, "also related to diabetes and neuropathy and she has been evaluated by neurologist you need to get his opinion." R. 914.

On October 28, 2010, state agency physician Michael Hartman, M.D. reviewed Snider's records and concluded that she was capable of performing a range of light work. R. 47–57.

On January 19, 2011, Dr. Walker, Snider's longtime treating physician, completed a functional capacity questionnaire setting forth Snider's limitations. Dr. Walker diagnosed Snider with fibromyalgia, type I diabetes, chronic low back pain, chronic depression, migraines, arthritis in the right hip, and diabetic polyneuropathy. R. 928. Dr. Walker found that Snider could sit, stand and walk each for 2 hours in an 8 hour work day; lift less than 10 pounds occasionally, rarely lift 10 pounds, and never lift 20 pounds; never twist or climb ladders; and rarely stoop, crouch or climb stairs. Dr. Walker found that Snider would need unscheduled breaks at least every two hours, and had significant limitations with repetitive reaching, handling or fingering. Dr. Walker found that Snider's pain would interfere with her concentration and attention constantly, and that she would miss more than four days each month as a result of her impairments. R. 928–30.

On January 25, 2011, Pamela S. Tessnear, Ph.D., performed a psychological evaluation of Snider, diagnosing her with depression, anxiety and a pain disorder associated with both psychological factors and a general medical condition. R. 1032–40. Dr. Tessnear noted that

9

"without relief from pain, no significant change in mental functioning is expected." R. 1039. Dr. Tessnear noted that Snider's concentration was disrupted by anxiety, especially when she was asked to perform mental status tasks. She was easily frustrated and needed encouragement to continue. Dr. Tessnear found that Snider has good social skills and can present in an appropriate manner, but would have difficulty working with the public and would do best in work situations that required minimal, superficial contact with co-workers. R. 1040. Dr. Tessnear concluded that Snider was able to understand and follow simple instructions. R. 1039.

At the administrative hearing on February 16, 2011, Dr. Stevens testified as a medical expert. R. 1139–153. Dr. Stevens reviewed Snider's medical records[11] and testified that Snider was capable of performing light work, with limited pushing/pulling with the right upper extremity, occasional stooping, no crawling or crouching, and no climbing of ladders, ropes or scaffolds. Dr. Stevens noted that Snider's neurologist questioned whether her alleged carpal tunnel symptoms resulted from diabetic neuropathy or carpal tunnel syndrome, and stated that if Snider has carpal tunnel syndrome, she would be limited to only occasional repetitive utilization of the hands. R. 1142, 1149.

In her decision, the ALJ considered all of Snider's relevant medical evidence in accordance with the regulations, and determined the appropriate weight to give each opinion. R. 37–38. The ALJ found that the opinions of Drs. Walker and McMahon that Snider was incapable of performing substantial gainful activity due to her impairments were not supported by their treatment notes or the totality of the record, and thus, gave them no weight. The ALJ gave slight weight to the opinion of Dr. Leipzig that Snider was capable of returning to full-duty work, noting that he saw her only once. R. 37. The ALJ found that Dr. Stevens' opinion that

---

[11] Dr. Stevens reviewed some of Snider's medical records, including Dr. Walker's opinion, during the hearing because they were not previously provided to him. R. 1140–144.

10

Snider was capable of a range of light work was consistent with the objective medical evidence and Snider's treatment history and gave it great weight. The ALJ also discussed the opinions of the state agency physicians that Snider was capable of performing a range of light work, but did not specifically state the weight she gave them.

Snider argues that the ALJ's decision to give the opinions of Drs. Walker and McMahon no weight was erroneous and not supported by substantial evidence. A treating physician's opinion is not automatically entitled to controlling weight. The social security regulations require that an ALJ give the opinion of a treating source controlling weight, if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2). The ALJ must give "good reasons" for not affording controlling weight to a treating physician's opinion. Id.; Saul v. Astrue, Civ. Action No. 2:09-cv-1008, 2011 WL 1229781 (S.D. W.Va. March 28, 2011). Further, if the ALJ determines that a treating physician's medical opinion is not deserving of controlling weight, the following factors must be considered to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. § 416.927(c)(2)-(5). "None of these factors may be omitted or disregarded by the ALJ in weighing the value of a treating physician's opinion." Ricks v. Comm'r, No. 2:09cv622, 2010 WL 6621693, at *10 (E.D. Va. Dec. 29, 2010). Here, the ALJ's decision to afford less weight to Dr. Walker and Dr. McMahon's opinions is supported by the record.

Snider argues that the ALJ should have given her treating physicians' opinions controlling weight because they were supported by extensive office notes over the relevant period that include Snider's subjective complaints of pain, and objective observations of tenderness and muscle spasms. Pl. Br. Summ. J. p. 7–13. There is no question that Snider consistently complained of severe pain throughout the relevant period. However, complaints of pain alone do not translate into functional limitations, and documentation by Snider's physicians of her subjective complaints does not transform those complaints into clinical evidence. See Webb v. Astrue, 2012 WL 3061565, at *17 (N.D.W. Va. June 21, 2012) (citing Craig v. Chater, 76 F.3d 585, 590 n.2 (4th Cir. 1996)).

Further, although Drs. Walker and McMahon's treatment notes documented Snider's consistent complaints of pain, they reflect only benign findings on physical examination. At most, Snider's treating physicians' notes reflect tenderness and occasionally reduced range of motion in her spine. R. 187,191, 195, 198, 614–15, 618–19, 623, 625, 627, 633, 638, 640, 642, 644, 647, 671, 684–86,785, 789, 793, 855–86, 861, 864, 870, 933, 954, 972. Snider consistently had full range of motion and full strength in her lower extremities, intact neurological exams and normal gait. Id.

Snider's allegations of disabling pain and severe limitations are also not supported by her diagnostic tests during the relevant period, which revealed mild disc degeneration in Snider's spine, and mild degenerative arthritis in her right hip. R. 549, 550, 560, 610, 667, 966–67. X-rays reflected possible impingement in Snider's right shoulder, and neurological testing revealed mild diabetic neuropathy. R. 916–17, 1064. Thus, despite documenting Snider's persistent complaints of pain over a span of many years, the records from Snider's treating physicians lack

12

Case 7:13-cv-00030-MFU-RSB   Document 26   Filed 08/11/14   Page 12 of 18   Pageid#: 1306

objective evidence of work-preclusive mental or functional limitations to support an opinion suggesting disability.[12]

Snider argues that her treating physicians' opinions are sufficiently supported by her subjective complaints of pain, because some of the impairments from which she suffers, such as fibromyalgia, cannot be measured by objective tests. Here, the ALJ reviewed Snider's voluminous medical records documenting her persistent complaints of pain, and considered and accounted for that evidence in arriving at her RFC. The ALJ also considered the opinions of two independent medical examiners who concluded that Snider's alleged symptoms were out of proportion to her examination, and noted additional signs that Snider was exaggerating her symptoms. R. 906, 908. Further, the ALJ did not discount the opinions of Drs. Walker and McMahon based solely upon a lack of objective evidence, but also relied upon the contradictory opinions of other physicians in the record. Indeed, all other medical opinions in the record conclude that Snider is capable of performing at least a range of light exertional work. R. 37–38, 846–53, 871–77, 1148–150.

Snider also argues that the "greater weight of the medical record supports the findings of Dr. Walker as to [Snider's] impairments and functional limitations." P. Br. Summ. J. p. 17. This argument asks the court to re-weigh the medical opinions and other evidence in the record. The issue before this court is not whether it is plausible that a different fact finder could have drawn a different conclusion or even if the weight of the evidence supports a finding of disability. The standard is whether the ALJ's decision is supported by substantial evidence, which is more than

---

[12] Notably, Dr. McMahon's opinion is simply a checkbox form relating to Snider's workers' compensation claim. Courts in the Fourth Circuit have recognized the limited probative value of such checkbox opinion forms. Leonard v. Astrue, No. 2:11cv00048, 2012 WL 4404508, at *4 (W.D. Va. Sept. 25, 2012) (citing Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir.1993) ("Such check-the-box assessments without explanatory comments are not entitled to great weight, even when completed by a treating physician.")

13

a scintilla and less than a preponderance. There may be a myriad of possible decisions in any one case that are supported by substantial evidence. Having reviewed the record as a whole, I find that substantial evidence supports the ALJ's decision to give the opinions of Drs. Walker and McMahon no weight, and recommend that it be affirmed.[13]

**Credibility**

Snider also alleges that the ALJ improperly evaluated her credibility as to her subjective pain complaints, and that the rationale provided by the ALJ to discredit her testimony was inadequate. Specifically, Snider argues that the ALJ failed to consider her activities of daily living when assessing her credibility. Pl. Br. Summ. J. p. 20. Snider also claims that the ALJ did not properly discuss or consider her history of pain complaints and her numerous of failed treatments when finding her to be less than fully credible. Pl. Br. Summ. J. p. 20–21.

The regulations require that the Commissioner consider all available evidence, including a claimant's medical history, signs and laboratory findings, statements, medical opinions, objective medical evidence, daily activities when evaluating a claimant's symptoms. 20 C.F.R. § 404.1529 (c)(1)–(4). Here, the ALJ's decision discusses Snider's extensive medical history in detail, as well as her subjective complaints and testimony at the administrative hearing. R. 26–38. Snider acknowledges that the ALJ discussed her testimony regarding activities of daily living at length while discussing step three of the sequential analysis as to whether Snider met the criteria of a listed impairment. The ALJ is not required to rehash the same evidence discussed in step three of the decision in later stages of the opinion. See McCartney v. Apfel, 28

---

[13] Snider also argues that the ALJ did not properly discuss all of the factors under 20 C.F.R. § 404.1527(c) when evaluating Drs. Walker and McMahon's opinions. While the regulations require the ALJ to consider all six factors, the ALJ is "not required to make a seriatim assessment as if it were a sequential evaluation." Vaughn v. Astrue, No. 4:11-cv-29, 2012 WL 1267996, at *5 (W.D. Va. Apr. 13, 2012). Here, the ALJ recited the factors that she was required to consider, and provided "good reasons" for the weight given to the treating sources' opinions The ALJ was not required to engage in a point-by-point analysis of the evidence as it relates to each of the factors. Murrell v. Colvin, 4:13-CV-124-FL, 2014 WL 2114890, at *5 (E.D.N.C. May 20, 2014).

14

F. App'x 277, 279–80 (4th Cir. 2002) (rejecting challenge to ALJ's finding for lack of sufficient detail where other discussion in decision adequately supported finding and stating "that the ALJ need only review medical evidence once in his decision"); Kiernan v. Astrue, No. 3:12CV459–HEH, 2013 WL 2323125, at *5 (E.D. Va. May 28, 2013) (observing that, where an "ALJ analyzes a claimant's medical evidence in one part of his decision, there is no requirement that he rehash that discussion" in other parts of his analysis). Here, the ALJ included in her decision a thorough summary of Snider's testimony at the administrative hearing, which described Snider's alleged functional limitations and capacity to perform activities of daily living. R. 32–35.

Snider also argues that the ALJ did not properly discuss or consider her history of pain complaints and the myriad of failed treatments when assessing her credibility. The ALJ's decision reflects appropriate consideration of the pain caused by Snider's conditions and the treatments she was prescribed. "While the pain caused by an impairment, independent from any physical limitations imposed by that impairment, may of course render an individual incapable of working, allegations of pain and other subjective symptoms, without more, are insufficient." Craig v. Chater, 76 F.3d 585, 592 (4th Cir. 1996) (citing Myers v. Califano, 611 F.2d 980, 983 (4th Cir. 1980)). The Fourth Circuit has recognized a two-step process to determine whether pain has rendered a claimant disabled by pain. Hines v. Barnhart, 453 F.3d 559, 564–66 (4th Cir. 2006). First, the claimant must establish with objective medical evidence that she suffers from an impairment that could reasonably be expected to cause pain. Id.; see also Craig, 76 F.3d at 594. "It is only *after* a claimant has met [this] threshold obligation . . . that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated." Craig, 76 F.3d at 595 (citing 20 C.F.R. §§ 416.929(c)(1) & 404.1529(c)(1)) (emphasis in original). During this second step, while the claimant may rely entirely on

15

subjective evidence, objective evidence remains relevant. Hines, 453 F.3d at 565. In other words, while the absence of objective medical evidence of the intensity, severity, degree, or functional effect of pain is not determinative, id., a claimant's allegations about her pain "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers." Craig, 76 F.3d at 595 (citing 20 C.F.R. § 416.929(c)(4)). Furthermore, the claimant cannot make a showing of disability merely by demonstrating that she experiences pain. Green v. Astrue, 3:10CV764, 2011 WL 5593148, at *4 (E.D. Va. Oct. 11, 2011) (citing Hays, 907 F.2d at 1457–58) ("An individual does not have to be pain-free in order to be found 'not disabled.'"), report and recommendation adopted, 3:10CV764, 2011 WL 5599421 (E.D. Va. Nov. 17, 2011). The pain must be so severe as to prevent the claimant from performing any substantial gainful activity.

There is no dispute that Snider's impairments could reasonably be expected to cause pain; the focus of the ALJ's inquiry is whether Snider's pain is as severe as she alleged during the relevant period. Snider testified at the administrative hearing that she suffers from pain in her neck, shoulder, chest, arms, legs and head. R. 1132. She testified that she is capable of walking a block, standing less than two hours, sitting less than two hours, and lifting less than 10 pounds. R. 1132–38. Snider testified that she spends most of her day sitting or laying in bed, and that she sometimes needs help getting dressed or washing her hair. R. 1132–1138.

Credibility determinations are emphatically the province of the ALJ, not the court, and courts normally should not interfere with these determinations. See, e.g., Chafin v. Shalala, No. 92-1847, 1993 WL 329980, at *2 (4th Cir. Aug. 31, 1993) (per curiam) (citing Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) and Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir.

16

1964)); Melvin v. Astrue, 6:06CV00032, 2007 WL 1960600, at *1 (W.D. Va. July 5, 2007) (citing Hatcher v. Sec'y of Health & Human Servs., 898 F.2d 21, 23 (4th Cir. 1989)).

Here, the ALJ properly considered all of the evidence of record when assessing Snider's credibility, and found that her statements concerning the intensity, persistence and limiting effects of her pain were not entirely credible. Specifically, the ALJ noted that Snider's physical examinations and diagnostic tests do not fully support her allegations regarding the severity of her pain and functional limitations. R. 36–37. Further, the record contains suggestions that Snider was exaggerating her symptoms. R. 907–08. Viewed as a whole, the record supports the ALJ's conclusion that Snider experienced some pain during the relevant period, but not disabling pain. The ALJ accounted for the limitations imposed by Snider's conditions by limiting her to a reduced range of light work. The ALJ's opinion reflects adequate consideration of the pain caused by Snider's conditions, and because substantial evidence supports the ALJ's determination of Snider's credibility regarding her pain, I cannot recommend reversal or remand on this basis.

## CONCLUSION

It is not the province of the court to make a disability determination. The court's role is limited to determining whether the Commissioner's decision is supported by substantial evidence, and in this case, substantial evidence supports the ALJ's opinion. The ALJ properly considered all of the objective and subjective evidence in adjudicating Snider's claim for benefits and in determining that her physical and mental impairments would not significantly limit her ability to do basic work activities. Accordingly, I recommend that the Commissioner's decision be affirmed, the defendant's motion for summary judgment be **GRANTED**, and Snider's motion for summary judgment be **DENIED**.

The Clerk is directed to transmit the record in this case to Michael F. Urbanski, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

Enter: August 11, 2014

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge