# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| LINDA M. SNIDER, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) Civil Action No. 7:13cv00030 |
| v. | ) |
| | ) |
| CAROLYN W. COLVIN, | ) By:  Michael F. Urbanski |
| Commissioner of Social Security, | )       United States District Judge |
| | ) |
|     Defendant. | ) |

## MEMORANDUM OPINION

This social security disability appeal was referred to the Honorable Robert S. Ballou, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for proposed findings of fact and a recommended disposition. The magistrate judge filed a report and recommendation on August 11, 2014, recommending that plaintiff's motion for summary judgment be denied, the Commissioner's motion for summary judgment be granted and the Commissioner's final decision be affirmed. Plaintiff has filed objections to the report, the Commissioner has responded, and this matter is now ripe for the court's consideration.

## I.

Rule 72(b) of the Federal Rules of Civil Procedure permits a party to "serve and file specific, written objections" to a magistrate judge's proposed findings and recommendations within fourteen days of being served with a copy of the report. See also 28 U.S.C. § 636(b)(1). The Fourth Circuit has held that an objecting party must do so "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." United States v. Midgette, 478 F.3d 616, 622 (4th Cir.), cert denied, 127 S. Ct. 3032 (2007).

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any

> issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

Id. The district court must determine de novo any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); accord 28 U.S.C. § 636(b)(1).

If, however, a party "'makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations,'" de novo review is not required. Diprospero v. Colvin, No. 5:13-cv-00088-FDW-DSC, 2014 WL 1669806, at *1 (W.D.N.C. Apr. 28, 2014) (quoting Howard Yellow Cabs, Inc. v. United States, 987 F. Supp. 469, 474 (W.D.N.C. 1997) (quoting Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982))). "The court will not consider those objections by the plaintiff that are merely conclusory or attempt to object to the entirety of the Report, without focusing the court's attention on specific errors therein." Camper v. Comm'r of Soc. Sec., No. 4:08cv69, 2009 WL 9044111, at *2 (E.D. Va. May 6, 2009), aff'd, 373 F. App'x 346 (4th Cir.), cert. denied, 131 S. Ct. 610 (2010); see Midgette, 478 F.3d at 621 ("Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized, as the statute directs the district court to review only '*those portions* of the report or *specified* proposed findings or recommendations *to which objection is made*.'"). Such

2

general objections "have the same effect as a failure to object, or as a waiver of such objection." Moon v. BWX Technologies, 742 F. Supp. 2d 827, 829 (W.D. Va. 2010), aff'd, 498 F. App'x 268 (4th Cir. 2012); see also Thomas v. Arn, 474 U.S. 140, 154 (1985) ("[T]he statute does not require the judge to review an issue de novo if no objections are filed").

Additionally, objections that simply reiterate arguments raised before the magistrate judge are considered to be general objections to the entirety of the report and recommendation. See Veney v. Astrue, 539 F. Supp. 2d 841, 844-45 (W.D. Va. 2008). As the court noted in Veney:

> Allowing a litigant to obtain de novo review of her entire case by merely reformatting an earlier brief as an objection "mak[es] the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act." Howard [v. Sec'y of Health & Human Servs.], 932 F.2d [505,] [] 509 [(6th Cir. 1991)].

539 F. Supp. 2d at 846. A plaintiff who reiterates her previously-raised arguments will not be given "the second bite at the apple she seeks;" instead, her re-filed brief will be treated as a general objection, which has the same effect as would a failure to object. Id.

## II.

In the midst of the myriad impairments and extensive treatment history documented in the more than 1200 page administrative record,[1] Snider draws the court's attention to the opinion of her long-time primary care physician, Dr. Kenneth Walker, as to the functional limitations caused by her fibromyalgia. On January 19, 2011, Dr. Walker filled out a Fibromyalgia Residual Functional Capacity (RFC) Questionnaire, in which he opined that

---

[1] Detailed facts about Snider's impairments and medical and procedural history can be found in the report and recommendation (Dkt. # 26) and in the voluminous administrative transcript (Dkt. # 7). As such, they will not be repeated here.

3

Snider could sit less than 2 hours and stand/walk less than 2 hours in an 8-hour workday. Dr. Walker indicated that Snider would need to take unscheduled breaks during the work day "every couple of hours," but did not indicate for how long. He opined that she could occasionally lift less than 10 pounds and rarely lift 10 pounds, has significant limitations in doing repetitive reaching, handling or fingering, and would be absent from work more than four days per month as a result of her impairments. When asked if Snider's impairments were likely to produce "good days" and "bad days," Dr. Walker checked "no" and commented: "Honestly—all seem bad. Never happy here." (R. 928-30.)

Snider argues that the magistrate judge erred in finding substantial evidence supports the Administrative Law Judge's (ALJ) decision to give no weight to Dr. Walker's opinion. Snider specifically takes issue with the ALJ's explanation of the weight given to Dr. Walker's opinion and contends "the Magistrate Judge attempts to provide the explanation for the ALJ's rejection of Dr. Walker's opinions not found in the denial decision itself." Pl.'s Objections, Dkt. # 27, at 11. The court cannot agree.

### A.

The ALJ explicitly stated that she considered the opinion evidence in this case in accordance with the requirements of 20 C.F.R. §§ 404.1527, 416.927. (R. 35.) These regulations require the ALJ to consider: "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). The ALJ recited these factors in her opinion. (R. 37.) The regulations also require the ALJ to "give good reasons" for not affording controlling weight to a treating physician's opinion. 20 C.F.R. §§ 404.1527(c)(2),

4

416.927(c)(2). However, "a point-by-point articulation of each inconsistency [between the treatment notes and a treating physician's opinion as to a claimant's functional capacity] is not required for the court to understand the ALJ's reasons for weight given the opinion." Hawley v. Colvin, No. 5:12-CV-260-FL, 2013 WL 6184954, at *4 (E.D.N.C. Nov. 25, 2013).

In this case, the ALJ sufficiently explained her reasons for rejecting Dr. Walker's opinion concerning Snider's functional capacity, stating:

> This Administrative Law Judge cannot give Dr. Walker[']s opinion controlling weight in light of the above factors, and i[n] fact gives no weight to the opinion of Dr. Walker as his opinion is not supported by the objective medical evidence or his own treatment notes and Dr. Walker appears to have based his opinion on the claimant's subjective complaints.

(R. 38.) Lack of supportability and inconsistency with the record are both appropriate reasons pursuant to Johnson and the regulations for the ALJ to have declined to adopt Dr. Walker's opinion. See Bishop v. Comm'r, No. 14-1042, 2014 WL 4347190, at *1 (4th Cir. Sept. 3, 2014) ("While the ALJ did not explicitly analyze each of the Johnson factors on the record, the ALJ was clear that he concluded that the doctor's opinion was not consistent with the record or supported by the medical evidence, which are appropriate reasons under Johnson.").

Moreover, the ALJ took note in her opinion of the fact that Dr. Walker was Snider's "family care physician" (R. 26), not a specialist, which is the fifth Johnson factor to be considered and further supports the ALJ's decision in this regard. Although the ALJ did not specifically mention the first two Johnson factors in her analysis, it is clear that the nature and extent of Snider's examining and treating relationship with Dr. Walker was not lost on the ALJ, as she outlined Snider's extensive treatment history earlier in her opinion. (R. 25-31.) These two factors militate in favor of according Dr. Walker's opinion controlling weight. The ALJ plainly determined, however, that other three Johnson factors tip the scales

5

in the opposite direction. The court finds no error in the ALJ's explanation of the weight given to Dr. Walker's opinion.

**B.**

Snider also contends that "a perceived lack of objective medical evidence as to the disabling effect of fibromyalgia is not a reasonable basis for discounting Dr. Walker's opinions," and argues it "demonstrates a failure to understand fibromyalgia or its symptoms." Pl.'s Objections, Dkt. # 27, at 4.[2] Snider raised a similar argument on summary judgment. The magistrate judge stated:

> Here, the ALJ reviewed Snider's voluminous medical records documenting her persistent complaints of pain, and considered and accounted for that evidence in arriving at her RFC. The ALJ also considered the opinions of two independent medical examiners who concluded that Snider's alleged symptoms were out of proportion to her examination, and noted additional signs that Snider was exaggerating her symptoms. Further, the ALJ did not discount the opinions of Drs. Walker and McMahon based solely upon a lack of objective evidence, but also relied upon the contradictory opinions of other physicians in the record. Indeed, all other medical opinions in the record conclude that Snider is capable of performing at least a range of light exertional work.

Report & Recommendation, Dkt. # 26, at 13. Snider cites to several statements in this passage of the report and recommendation that she claims are erroneous. First, Snider

---

[2] Snider's reliance on Social Security Ruling 12-2p is misplaced. SSR 12-2p postdates the ALJ's decision in this case. Even if the ruling applies, however, it does not support Snider's argument that objective evidence is not relevant or necessary to this analysis. SSR 12-2p describes how the agency evaluates whether a claimant's fibromyalgia symptoms represent a medically determinable impairment. The Ruling specifically states:

> As in all claims for disability benefits, we need objective medical evidence to establish the presence of [a medically determinable impairment]. When a person alleges [fibromyalgia], longitudinal records reflecting ongoing medical evaluation and treatment from acceptable medical sources are especially helpful in establishing both the existence and severity of the impairment.

The Ruling further states that if objective medical evidence does not substantiate a claimant's statements about the intensity, persistence, and functionally limiting effects of her symptoms, the agency considers all of the evidence in the record and makes a credibility determination. Here, as explained infra, the ALJ did just that.

6

asserts that "contrary to the Magistrate Judge's characterization of the record, the ALJ did not consider the opinions of two independent medical examiners who concluded that Snider's symptoms were out of proportion to her examination." Pl.'s Objections, Dkt. # 27, at 12. The magistrate judge is referring to the evaluations of Drs. Leipzig and Wilson, who examined Snider in connection with a worker's compensation claim following a back injury she claimed to have suffered on April 30, 2007 while working as a nursing assistant. Dr. Wilson's independent medical evaluation is not part of the record in this case. However, the evaluation from Dr. Leipzig is in the record and it references Dr. Wilson's findings:

> In May of 2008, this patient had an independent medical evaluation by Dr. Richard Wilson of Christiansburg. The patient was diagnosed with lumbar sprain, anxiety and diabetes. Dr. Wilson felt her symptoms were out of proportion to her examination and felt that she would be capable of a gradual return to full activity.
>
> ***
>
> Independent medical evaluation by Dr. Richard Wilson, dated May 5, 2008, provides excellent history and record review. Dr. Wilson notes that the x-ray of the left hip was normal on July 3, 2007. MRI of the lumbar spine, dated June 6, 2007, demonstrates mild degenerative change, normal for age. Dr. Wilson noted Dr. McMahon's comment of the lumbar sprain and chronic recurrent back pain for many years. There is a note of Dr. Mink's diagnoses of fibromyalgia, neuropathic pain, arthralgia, and insulin-dependent diabetes mellitus. Dr. Wilson felt that this patient has an uncomplicated lumbar sprain with significant anxiety. Dr. Wilson is quite skeptical of the fibromyalgia issues. He did feel that she was clearly at maximum medical improvement.

(R. 906-07.)

For his part, Dr. Leipzig found Snider to appear "very anxious" upon examination. (R. 907.) She reported "significant pain all over the lumbar spine with simple light touch, stroke, or pinch. Head compression reproduces severe back pain report." (R. 907.) He stated: "Waddell sign demonstrates positive pinch, light touch, head compression,

7

nonanatomic distribution, overexaggeration, reverse Lasegue's and seated verses supine straight leg raise." (R. 907.)[3] Dr. Leipzig diagnosed Snider with severe, chronic, allover, non-anatomical back pain; no evidence of objective injury on April 30, 2007; history of chronic low back pain; severe anxiety disorder with psychiatric overlay; multiple positive Waddell signs indicating nonorganic basis of disease; and normal neurological examination. (R. 908.) Dr. Leipzig further opined that Snider "is fully capable of full-duty employment without restrictions" and "[t]he only issue which would keep this patient from return to work would be her obvious desire to not return to work and obvious underlying psychiatric comorbidity." (R. 908.)

In her decision, the ALJ referenced the evaluations of Drs. Wilson and Leipzig, taking note of Dr. Wilson's opinion that Snider's symptoms were out of proportion to her examination and reciting Dr. Leipzig's findings. (R. 28-29.) The ALJ gave only slight weight to Dr. Leipzig's opinion, recognizing that he "only saw the claimant once." (R. 37.) She did not consider the findings of Dr. Wilson, as documented by Dr. Leipzig, as a medical source opinion, which is appropriate given that Dr. Wilson's evaluation is not part of the record. However, the findings of both Drs. Leipzig and Wilson, as set forth in Dr. Leipzig's report, plainly bear on the issue of credibility as to the intensity and severity of Snider's symptoms. As such, the court finds no error in either the magistrate judge or the ALJ's consideration of those findings for that purpose.

Snider also asserts that the magistrate judge incorrectly stated that all other medical opinions in the record conclude Snider is capable of light work. Snider points to the opinion of Dr. Devereaux, who saw Snider only once and checked a box stating she was "on total

---

[3] In her objections, Snider insists that the ALJ's statement that "some examinations have shown signs consistent with symptom exaggeration" (R. 36) is not a proper interpretation of Dr. Leipzig's findings, suggesting instead that the positive Waddell's signs may be explained by fibromyalgia. Pl.'s Objections, Dkt. # 27, at 6-7. The court finds nothing improper about the ALJ's interpretation of Dr. Leipzig's findings.

8

disability status until 1/12/09" but could not state whether her disability status was causally related to her low back in injury of April 30, 2007. (R. 913.) Dr. Devereaux's treatment notes from that single visit on October 24, 2008 state "it would appear unlikely that [Snider] would be able to return to her previous position." (R. 1106.) The court notes that Snider's previous position as a certified nursing assistant was performed at the heavy exertional level. (R. 1155.) While Dr. Devereaux does not explicitly state that Snider can perform light work, there is nothing about his opinion that is inconsistent with such a finding.

Additionally, Snider contends that "the state agency physician who reviewed Plaintiff's second application for benefits in 2010 determined that she was limited to sedentary work. TR, 47-58." Pl.'s Objections, Dkt. #27, at 12 n.12. Snider cites to the opinion of Dr. Michael Hartman, who conducted a review of the record on October 28, 2010. Although he found she could stand and / or walk for only 4 hours in an 8-hour workday, compared to the ALJ's finding that she could stand and / or walk for 6 hours, Dr. Hartman determined Snider "has a limited light RFC" (R. 56), contrary to Snider's assertions. See 20 C.F.R. §§ 404.1567(b), 416.967(b) (defining light work).

Regardless, the medical expert, Dr. Ward Stevens, reviewing state agency physicians, Drs. Richard Surrusco and Robert McGuffin, and independent medical examiner, Dr. James Leipzig, all opined that Snider could work at the light exertional level. These opinions provide substantial evidence to support the ALJ's decision as to Snider's residual functional capacity.

## C.

Finally, Snider argues that although the ALJ said she gave great weight to Dr. Tessnear's opinion, "it is difficult to discern that degree of deference" from the ALJ's decision, given her determination that Snider could return to her past relevant work as a

9

production assembler or engage in other production-type work. Pl.'s Objections, Dkt. # 27, at 10; see also Pl.'s Summ. J. Br., Dkt. # 15, at 6 n.5.[4] In her January 25, 2011 psychological evaluation of Snider, Dr. Tessnear concluded:

> She is able to understand and follow simple instructions. Concentration is disrupted by anxiety, especially when she is asked to perform, as on mental status tasks. When she loses her focus, she has much difficulty regaining it. She is easily frustrated and needs encouragement to continue. She has good social skills and is able to present in an appropriate manner but has become self-conscious and nervous around other people. She would have difficulty working with the public and would do best in work situations that require minimal, superficial contact with co-workers. Her fear of heights and enclosed spaces would further limit settings in which she could function adequately.

(R. 1039-40.)

Snider suggests that Dr. Tessnear's findings as to her ability to concentrate are inconsistent with the production-type jobs identified by the vocational expert and the ALJ. She offers no evidence to support this contention, however. It is clear that the ALJ gave great weight to the findings of Dr. Tessnear, limiting Snider as of the date of Dr. Tessnear's evaluation "to the performance of work that involves only occasional interactions/cooperation with the general public, superficial contact with coworkers and supervisors and only simple, routine, repetitive, unskilled tasks." (R. 35.) The fact that the ALJ did not incorporate a limitation based on Dr. Tessnear's specific finding as to Snider's concentration is not error, especially in light of the fact that the reviewing state agency psychologists found Snider has only mild difficulties in maintaining concentration, persistence and pace. (R. 776, 841.)

---

[4] Snider asserts that the magistrate judge failed to address this argument, which was initially raised in a footnote in her summary judgment brief and she claims was "expanded upon during oral argument." Pl.'s Objections, Dkt. # 27, at 10 n.10.

**D.**

Contrary to Snider's assertions, the ALJ relied on all of the record evidence —not solely the lack of objective evidence— in determining that the degree of disabling pain claimed by Snider and reflected in Dr. Walker's opinion does not render her disabled from all work. The ALJ provided an extensive narrative of the treatment history and opinion evidence. She cited to the numerous medical opinions as to the degree of Snider's functional limitations. The ALJ discharged her duty under 20 C.F.R. §§ 404.1529(c), 416.929(c) in assessing Snider's credibility as to the severity and limiting nature of Snider's pain. To that end, the ALJ found Snider's claims not to be credible to the extent they are inconsistent with the ALJ's RFC assessment. Credibility determinations are emphatically the province of the ALJ, not the court, and courts normally should not interfere with these determinations. See, e.g., Chafin v. Shalala, No. 92–1847, 1993 WL 329980, at *2 (4th Cir. Aug. 31, 1993) (per curiam) (citing Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) and Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964)); Melvin v. Astrue, 6:06 CV 00032, 2007 WL 1960600, at *1 (W.D. Va. July 5, 2007) (citing Hatcher v. Sec'y of Health & Human Servs., 898 F.2d 21, 23 (4th Cir. 1989)). On this record, the court finds no reason to disturb the ALJ's credibility determination.

A different factfinder may have reached another conclusion in this case. The court, however, is mindful of its limited role in reviewing social security disability appeals. It is not the province of a federal court to make administrative disability decisions. Rather, judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to meet her burden of proving disability. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In so doing, the court must not "re-weigh the conflicting

11

evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). In this case, substantial evidence supports the decision of the ALJ.

### III.

The court has reviewed the magistrate judge's report, the objections to the report, and the administrative record and, in so doing, made a de novo determination of those portions of the report to which Snider objected. The court finds that the magistrate judge was correct in concluding that there is substantial evidence in the record to support the ALJ's decision. As such, the magistrate judge's report and recommendation will be adopted in its entirety.

An appropriate Order will be entered to that effect.

Entered: September 29, 2014

*Michael F. Urbanski*

Michael F. Urbanski
United States District Judge